Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| VENTURA M. MARÍN BORRERO<br><br>Parte Apelada<br><br>vs.<br><br>MUNICIPIO DE SAN JUAN, et als.<br><br>Parte Apelante | TA2026AP00454 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.:<br>SJ2023CV09101<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de junio de 2026.

El 5 de mayo de 2026, la Autoridad de Acueductos y Alcantarillados (AAA o la parte apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia* emitida el 17 de marzo de 2026 y notificada el 18 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1]

En el aludido dictamen, el foro primario ordenó a la parte apelante a cumplir con el pago neto de una suma de $96, 571.92 en concepto de daños ocasionados ante la caída del señor Ventura M. Marín Borrero (el señor Marín Borrero o el apelado) en una acera tras tropezar con una válvula de la AAA.

Por los fundamentos que expondremos a continuación, modificamos la *Sentencia* apelada y, así modificada, la confirmamos.

**I.**

El caso de autos tuvo su origen el 26 de septiembre de 2023, cuando el señor Marín Borrero instó una *Demanda* contra el Municipio de San Juan; Mapfre-Prisco Insurance Company

---

[1] Entrada núm. 62 del caso núm. SJ2023CV09101 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

(Mapfre); el Estado Libre Asociado de Puerto Rico (el Estado) y el Departamento de Transportación y Obras Públicas (DTOP) sobre daños y perjuicios en la que alegó que, el 9 de junio de 2023, se encontraba conduciendo un *scooter* de alquiler en la Calle Condado en San Juan, Puerto Rico, cuando perdió el control de esta y cayó violentamente al pavimento.[2] Sostuvo que, a consecuencia de dicho accidente, sufrió una fractura en la clavícula derecha, una lesión previa de su rodilla se agravó, y sufrió laceraciones en su rostro. Manifestó que, dado lo anterior, fue transportado en ambulancia al Hospital Pavía en Santurce, el cual fue intervenido quirúrgicamente. Consecuentemente, solicitó una indemnización en concepto de daños y perjuicios por la suma de $140,000.00 por sufrimientos físicos, angustias mentales y gastos médicos futuros.

El 7 de noviembre de 2023, compareció el Estado mediante *Moción de Desestimación* en la que sostuvo que, sostuvo que el lugar en el que ocurrieron los hechos alegados no se encontraba bajo su jurisdicción, control ni deber de mantenimiento, ni tampoco bajo la jurisdicción del DTOP. [3] Adujo que, dicha responsabilidad recaía sobre el Municipio de San Juan. En consecuencia, solicitó la desestimación de la reclamación en su contra a tenor con las disposiciones de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V., R 10.2.

Por su parte, el 4 de diciembre de 2023, el Municipio de San Juan instó una *Contestación a Demanda* en la que arguyó que, de resultar legalmente responsable por los hechos reclamados, correspondería a su compañía aseguradora responder por los daños reclamados por el apelado.[4] Asimismo, indicó que no existía solidaridad entre esta y la parte apelante. Por tanto, solicitó al foro

---

[2] Entrada núm. 1 del caso núm. SJ2023CV09101 en el SUMAC.
[3] Entrada núm. 8 del caso núm. SJ2023CV09101 en el SUMAC.
[4] Entrada núm. 10 del caso núm. SJ2023CV09101 en el SUMAC.

primario que declarase No Ha Lugar la *Demanda* instada por el apelado.

Posteriormente, el 13 de diciembre de 2023, la parte apelada radicó una *Demanda Enmendada* con el propósito de incluir como parte demandada a la AAA en el pleito.[5] Manifestó que, el hueco que provocó su caída correspondía a una válvula u otro dispositivo propiedad de la AAA.

En cuanto a la desestimación previamente solicitada por el Estado, el 19 de enero de 2024, el TPI emitió una *Sentencia Parcial* en la que declaró Ha Lugar la desestimación de la acción en contra del Estado.[6]

Así las cosas, el 12 de febrero de 2024, compareció AAA mediante *Contestación a Demanda Enmendada* en la que alegó que, no era responsable de crear la condición peligrosa existente en el lugar del incidente.[7] Arguyó que, la responsabilidad u obligación de mantener el pavimento en condiciones óptimas recaía sobre la agencia gubernamental; instrumentalidad pública, gobierno municipal y/o contratista que repavimentó dicha vía pública. Ante ello, solicitó la desestimación del pleito en su contra.

Tras varios incidentes procesales, el 18 de septiembre de 2025, la parte apelada; el Municipio de San Juan y Mapfre comparecieron mediante *Estipulación Parcial de Desistimiento Voluntario, con Perjuicio a Tenor con la Regla 39.1 (A)(2) de Procedimiento Civil* en la que las partes acordaron el desistimiento, con perjuicio, con respecto al Municipio de San Juan y su aseguradora Mapfre, sin imposición de costas, gastos y honorarios de abogado a ninguna de las partes.[8] Empero, las partes aclararon que, dicho desistimiento no se extendía ni aplicaba a la AAA. Por

---

[5] Entrada núm. 13 del caso núm. SJ2023CV09101 en el SUMAC.
[6] Entrada núm. 19 del caso núm. SJ2023CV09101 en el SUMAC.
[7] Entrada núm. 20 del caso núm. SJ2023CV09101 en el SUMAC.
[8] Entrada núm. 44 del caso núm. SJ2023CV09101 en el SUMAC.

ende, solicitaron que el foro primario emitiera una sentencia parcial en la que decretara el desistimiento, con perjuicio, con relación al Municipio de San Juan.

En igual fecha, el TPI emitió una *Sentencia Parcial* en la que *Ha Lugar* lo solicitado en la *Estipulación Parcial de Desistimiento Voluntario, con Perjuicio a Tenor con la Regla 39.1 (A)(2) de Procedimiento Civil.*[9]

El 19 de septiembre de 2025, en conjunto, la AAA y el apelado instaron un *Informe de Conferencia con Antelación al Juicio* en el que estipularon que la caída objeto de la controversia ocurrió en una válvula telescópica propiedad de la AAA.[10] Las partes estipularon que, el lugar en donde ocurrió el accidente, se encontraba bajo la jurisdicción, control y mantenimiento del Municipio de San Juan. Añadieron que, el 5 de mayo de 2023, el Municipio escarificó y asfaltó el área donde se encontraba la válvula. Así las cosas, el 22 de septiembre de 2025, se celebró la *Conferencia con Antelación al Juicio* y se señaló el juicio en su fondo para el 16 de enero de 2026.[11]

Celebrado el *Juicio en su Fondo* en la fecha señalada, compareció como testigo de la parte apelada el señor Marín Borrero; mientras que la parte apelante presentó como testigo al señor Alberto Torres Rivera.[12] En cuanto a la prueba documental admitida en evidencia; surge de la *Minuta* lo siguiente:

> **Prueba Conjunta**[13]
> Exhibit #1-A: Fotografía del lugar del accidente
> (Las partes sustituirán el Exhibit #1-A conjunto por el que el demandante le realizó unas marcas en la vista de hoy el cual cargarán al sistema SUMAC)
> Exhibit #1-B: Fotografía del lugar del accidente
>
> **Prueba Demandante**[14]
> Exhibit #1-A: (Id. 2-A) Fotografía del Sr. Ventura Marín
> Exhibit #1-B: (Id. 2-B) Fotografía del Sr. Ventura Marín
> Exhibit #1-C: (Id. 2-C) Fotografía del Sr. Ventura Marín

---

[9] Entrada núm. 45 del caso núm. SJ2023CV09101 en el SUMAC.
[10] Entrada núm. 46 del caso núm. SJ2023CV09101 en el SUMAC.
[11] Entrada núm. 50 del caso núm. SJ2023CV09101 en el SUMAC.
[12] Entrada núm. 59 del caso núm. SJ2023CV09101 en el SUMAC.
[13] Entrada núm. 54 del caso núm. SJ2023CV09101 en el SUMAC.
[14] *Íd.*

Exhibit #1-D: (Id. 2-D) Fotografía del Sr. Ventura Marín
Exhibit #2-A: (Id. 1-A) Fotografía hueco
Exhibit #2-B: (Id. 1-B) Fotografía hueco
Exhibit #3: Currículum Vitae Dr. Omar Gómez Medina
Exhibit #4: Informe pericial Dr. Omar Gómez Medina

**Prueba Demandado**[15]
Exhibit #1: Aviso de ocurrencia o informe suscrito por Laiza M. Pizarro Santiago, Profesional de Apoyo Técnico de la AAA, con sus anejos.
Exhibit #2: Póliza de seguro núm. 1100228004380 expedida por Mapfre a la AAA y vigente del 1 de julio de 2022 al 1 de julio de 2023
Exhibit #3: Currículum Vitae Dr. Héctor M. Cortés Santos
Exhibit #4: Informe pericial Dr. Héctor M. Cortés Santos

Consecuentemente, el 18 de marzo de 2026, el foro primario emitió una *Sentencia*[16] en la que formuló las siguientes determinaciones de hechos:

1. El 8 de junio de 2023 el Sr. Marín salió de su trabajo a las 3:00 pm aproximadamente y alquiló una "*scooter*" eléctrica para transportarse hasta la parada de la guagua que lo llevaría a su casa. Por tal razón, se dirigió por el carril derecho y a favor del tránsito por la calle Condado en dirección a la Ave. Ponce de León.

2. Nos mereció credibilidad, luego de escuchar su testimonio, observar su forma de declarar y coherencia de su declaración, que cuando llevaba un cuarto de su recorrido la goma delantera de la "*scooter*" pasó por una ondulación que había en la calle y se encajó en el hueco que existía en la superficie de la válvula telescópica de la AAA.

3. La foto tomada el día de los hechos demostró, por las marcas causadas por los autos que se aprecian en la brea, que dicha ondulación es pronunciada. De igual forma, el hueco (botella telescópica) existente en la entrada de la válvula debía llevar mucho tiempo en el lugar, pues se puede apreciar que está lleno de gravilla y material vegetativo que aparenta estar creciendo.

4. Una vez la goma se pilló con el hueco de la válvula de la AAA, el demandante salió expulsado por el aire golpeándose violentamente con el pavimento.

5. Fue creído por el tribunal que la causa principal de que el demandante perdiera el control y sufriera la caída fue la ausencia de una tapa en la entrada de la válvula.

6. Al verlo tirado sin poderse poner de pie por el dolor que sentía, unas personas lo ayudaron a moverse hasta el borde de la acera donde permaneció tirado en el suelo por espacio de 15 minutos. Luego llegó una ambulancia que lo llevó hasta el Hospital Pavía en Santurce sintiéndose adolorido.

7. Allí fue evaluado y se le tomaron placas de las costillas, hombro y rodilla derecha. También se le realizaron

---

[15] Entrada núm. 56 del caso núm. SJ2023CV09101 en el SUMAC.
[16] Entrada núm. 62 del caso núm. SJ2023CV09101 en el SUMAC.

tomografías computarizadas de la cabeza, espina dorsal y hombro.

8. Como resultado de los exámenes, se le diagnosticó una fractura en la cabeza del húmero derecho con desviación craneal del fragmento distal. También sufrió una contusión en su rodilla derecha que le causó un agravamiento de sus padecimientos previos en dicha área; y, una abrasión en el área de la sien derecha.

9. El demandante permaneció recluido esa noche en el hospital. Al otro día fue sometido a una operación bajo anestesia general en la que se le colocaron tornillos y le hicieron un "*bone graft*" para poder pegar el hueso que estaba partido. También recibió transfusiones de sangre pre y post operatorias. En total permaneció 6 días hospitalizado.

10. Durante la hospitalización el Sr. Marín recibió medicamentos para el dolor tales como morfina y antibióticos para prevenir infecciones.

11. Fue prueba no contradicha que, como consecuencia de la caída y la operación, el demandante estuvo dos meses sintiéndose como "inválido" y necesitaba ayuda para bañarse, entre otras cosas. Describió dicho periodo de recuperación como "malísimo" y "doloroso".

12. Quedó con una cicatriz en su hombro derecho de 12 pulgadas aproximadamente como resultado de la operación, según se puede apreciar de las fotos incluidas como parte de la prueba pericial estipulada.

13. Aproximadamente un año luego del accidente se sometió a una operación de reemplazo de rodilla. Sin embargo, la prueba no pudo establecer la relación causal entre dicha intervención y la caída por la que se reclama.

14. La prueba pericial de ambas partes coincide en que, como consecuencia del accidente, el Sr. Marín quedó con un 9% de incapacidad de sus funciones generales.[17]

15. La AAA no tiene un protocolo o procedimiento para verificar la condición de las válvulas en las vías de rodaje.

16. Antes de la notificación de este caso la AAA no había recibido querellas por falta de tapa o cubierta en la válvula de la AAA.

17. Con el beneficio de haber evaluado de cerca la forma de hablar, el comportamiento, explicaciones, gestos, ademanes y sinceridad del Sr. Marín, determinamos que su testimonio nos mereció completa credibilidad.

Asimismo, el foro primario declaró Con Lugar la *Demanda* tras determinar que, en efecto, procedía imponer responsabilidad a la AAA a raíz de los daños sufridos por el señor Marín Borrero. En consecuencia, ordenó a la parte apelante pagar una suma de $96,571.92 en concepto de daños, costas y el interés legal vigente

---

[17] Nota al calce omitida, véase *Sentencia.*

aplicable de 8.0% anual. Lo anterior, luego de haberle aplicado un 30% de negligencia imputada al Municipio de San Juan.

No obstante, el 19 de marzo de 2026, el apelado instó *Moción en Solicitud de Reconsideración y en Solicitud de Sentencia Nunc Pro Tunc* en la que alegó que, según surge de la determinación de hecho número 14, el foro primario incidió al no considerar que una operación de rodilla a la cual fue sometido estuviese relacionada con el incidente objeto de controversia.[18] Por tanto, solicitó que se modificase la sentencia a los fines de incluir los daños asociados a la referida intervención quirúrgica y, por tanto, se ordenase el pago de una compensación adicional.

Insatisfecho, el 6 de abril de 2026, la parte apelante compareció mediante *Moción en Solicitud de Enmiendas a las Determinaciones de Hechos, Determinaciones Adicionales de Hechos y la Reconsideración de la Sentencia* en la que suplicó que, el TPI determinase que el accidente y los daños sufridos por el apelado fueron causados por negligencia de este y no del DTOP.[19]

Asimismo, el 2 de abril de 2026, la AAA instó *Oposición a Moción de Reconsideración* se declarase No Ha Lugar la moción de reconsideración instada por la parte apelada y, reconsiderase las sumas ordenadas a pagar en concepto daños.[20]

Así las cosas, el 24 de abril de 2026, el foro primario emitió una *Resolución Interlocutoria* en la que declaró No Ha Lugar la reconsideración instada por la parte apelada. [21]

Por su parte, el 27 de abril de 2026, el señor Marín Borrero instó *Oposición a: Solicitud de Enmiendas a las Determinaciones de Hechos, Determinaciones Adicionales de Hechos y la Reconsideración de la Sentencia* en la que argumentó que la desestimación del pleito

---

[18] Entrada núm. 63 del caso núm. SJ2023CV09101 en el SUMAC.
[19] Entrada núm. 73 del caso núm. SJ2023CV09101 en el SUMAC.
[20] Entrada núm. 79 del caso núm. SJ2023CV09101 en el SUMAC.
[21] Entrada núm. 80 del caso núm. SJ2023CV09101 en el SUMAC.

sobre el Estado produjo el efecto de que se desestimara contra el DTOP.[22] Asimismo, indicó que, a través de dicho dictamen, el foro primario determinó que procedía el desistimiento contra el Municipio de San Juan. Con ello, solicitó que, se declarase No Ha Lugar la solicitud de desestimación por entender que el apelante no desfiló prueba que fundamentara sus alegaciones.

El 27 de abril de 2026, el foro primario emitió una *Resolución Interlocutoria* en la que declaró No Ha Lugar la moción instada por el apelante.[23]

Inconforme, el 5 de mayo de 2026, el apelante acude ante nos mediante un recurso de *Apelación* en la que coligó los siguientes señalamientos de error:

> Primer error: Erró el TPI en su apreciación de la prueba testifical y documental admitida en el juicio y en sus determinaciones de hechos, las cuales no representan el balance más justiciero de la totalidad de la evidencia recibida.
>
> Segundo error: Erró el TPI al determinar que "la causa principal de que el [apelado] perdiera el control y sufriera la caída fue la ausencia de una tapa en la entrada de la válvula" y exponer que "[l]a preponderancia de la prueba no corrobora la teoría de la parte [apelante] de que la ondulación y/o hueco se formó por haber tirado brea sin elevar la entrada de la válvula. Más bien aparenta que se hundió la carretera creándose la curvatura que en el medio tenía el orificio sin cubrir."
>
> Tercer error: Erró el TPI al determinar que el Apelado no incurrió en negligencia comparada.
>
> Cuarto error: Erró el TPI al determinar que el Municipio de San Juan solo incurrió en un treinta por ciento (30%) de la responsabilidad por el accidente y los daños sufridos por el Apelado.
>
> Quinto error: Erró el TPI al no determinar que el Departamento de Transportación y Obras Públicas del Estado Libre Asociado de Puerto Rico (DTOP-ELA) incurrió en responsabilidad por el accidente y los daños sufridos por el Apelado.
>
> Sexto error: Erró el TPI al determinar que la Apelante incurrió en un 70% de responsabilidad por el accidente y los daños sufridos por el Apelado.
>
> Séptimo error: Erró el TPI en su apreciación de la prueba testifical y documental admitida en el juicio y en sus determinaciones de hechos, al determinar que el Apelado tiene un 9% de impedimento de sus funciones fisiológicas

---

[22] Entrada núm. 81 del caso núm. SJ2023CV09101 en el SUMAC.
[23] Entrada núm. 82 del caso núm. SJ2023CV09101 en el SUMAC.

generales como resultado del accidente alegado en la demanda.

Octavo error: Erró el TPI al estimar el valor de los daños sufridos por el Apelado y concederle a dicha parte una compensación improcedente en derecho y exageradamente alta.

Noveno error: Erró el TPI al imponerle a la Apelante el pago del interés legal al 8.0% anual sobre la sentencia emitida el 17 de marzo de 2026.

En unión al recurso ante nos, la parte apelante acompañó la Transcripción de la Prueba Oral (TPO) en aras de evaluar la apreciación de la prueba oral desfilada ante el foro primario. El 28 de mayo de 2026, emitimos una *Resolución* acogiendo la TPO como una estipulada entre las partes. Posteriormente, el 11 de junio de 2026, emitimos una *Resolución* concediendo al apelado hasta el 17 de junio de 2026 para presentar su oposición tras este solicitar una prórroga.

En cumplimiento con nuestra *Resolución*, el 17 de junio de 2026, el apelado radicó un *Alegato en oposición*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso ante nos.

## II.

## A.

Una de las fuentes de las obligaciones surge cuando los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia, está obligado a reparar el daño causado. Código Civil de Puerto Rico, 31 LPRA sec. 5141. El Art. 1536 del Código Civil de Puerto Rico, *supra* sec. 10801, establece que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo. La culpa o negligencia consiste en "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *López v. Porrata Doria*, 169 DPR 135, 151 (2006); *Toro Aponte v. ELA*, 142 DPR 464,

473 (1997). Ciertamente, "el deber de previsión *no* se extiende a todo peligro imaginable que pueda amenazar la seguridad de las personas; *la norma de responsabilidad es que el riesgo que debe preverse debe estar basado en probabilidades y no en meras posibilidades.*" *López v. Porrata Doria, supra,* págs. 164-165 (bastardillas en el original).

Para que prospere una acción de daños y perjuicios, el reclamante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465 (2022); *Pérez et al. v. Lares Medical et al.,* 207 DPR 965, 976 (2021); *López v. Porrata Doria, supra,* pág. 150. La culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Sucn. Mena Pamias et al. v. Meléndez et al.,* 212 DPR 758, 768 (2023). Véase, además, *Pérez Hernández et al. v. Lares Medical et al., Inc., supra,* págs. 976–977; *López v. Porrata Doria, supra,* pág. 151; *Toro Aponte v. ELA, supra,* pág. 473.

Ahora bien, entre el acto culposo y el daño sufrido debe existir un nexo causal adecuado. P*érez Hernández et al. v. Lares Medical et al., supra,* pág. 977. El nexo causal adecuado no es "causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general". *Pérez Hernández et al. v. Lares Medical et al., supra,* págs. 976-977.

Así pues, una vez se imponga responsabilidad conforme a la normativa jurídica pormenorizada, se resarce al damnificado con un valor económico al daño sufrido. *Sucn. Mena Pamias et al. v. Meléndez et al., supra,* pág. 769 (citando a *García Pagán v. Shiley Caribbean, etc.,* 122 DPR 193, 206 (1988).

En lo pertinente, la defensa de negligencia comparada estatuye que, al perjudicado no se le exime de responsabilidad, pero conlleva la reducción de la indemnización. *Semidey Ramos v. Farmacia Belmonte*, 211 DPR 222, 235 (2023). La negligencia comparada tiene como efecto atenuar la responsabilidad de la parte demandada, teniendo ante su consideración "el grado de negligencia desplegado por la parte demandante que contribuye a la producción de sus propios daños". *Semidey Ramos v. Farmacia Belmonte, supra*, págs. 235-236, citando a: *Colón Santos v. Coop. Seg. M [ú]lt. P.R.*, 173 DPR 170, 178 (2008). Ante la negligencia comparada, "el tribunal está llamado a 'individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia". *Semidey Ramos v. Farmacia Belmonte, supra*, pág. 236.

Ahora bien, en atención a la controversia ante nos, el Art. 403 del Código Político de Puerto Rico, 3 LPRA sec. 421, establece que el Secretario del Departamento de Transportación y Obras Públicas tiene la responsabilidad de mantener las carreteras a su cargo en buen estado de conservación. En esa línea, en una acción de daños y perjuicios, le corresponde al Estado Libre Asociado de Puerto Rico, indemnizar y responder a los perjudicados por los daños y perjuicios ocasionados debido a los desperfectos y la falta de reparación o protección en las vías a cargo de DTOP, salvo que los desperfectos fueron causados por la violencia de elementos y no hubo tiempo para remediarlos. Art.404 del Código Político de Puerto Rico, *supra* sec. 422. La *Ley de Travesías*, Ley Núm. 49 de 1 de diciembre de 1917 (Ley Núm. 49-1917), según enmendada, 9 LPRA sec. 12, estatuye que, las carreteras que atraviesen zonas urbanas de los pueblos. El Art. 2 de la Ley Núm. 49-1917 dispone que las vías que atraviesan las zonas urbanas "serán consideradas como parte de las carreteras estaduales y sometidas a las disposiciones vigentes en la

ley para la conservación y policía de los caminos públicos del Estado Libre Asociado de Puerto Rico". Los municipios tienen la obligación de mantener las aceras en un estado de uso razonable. *González Meléndez v. Municipio Autónomo de San Juan*, 212 DPR 601, 613 (2023); citando a: *Oliver v. Municipio de Bayamón*, 89 DPR 442, 445 (1963). Un municipio no se puede liberar de responsabilidad cuando alega que la situación de peligrosidad que había en la acera no estaba bajo su control, teniendo en cuenta el riesgo que podía anticiparse. *González Meléndez v. Municipio Autónomo de San Juan*, *supra*, pág. 613.

**B.**

Es norma reiterada que, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015). Bajo el crisol doctrinario, los jueces del TPI están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Peña Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1025 (2024); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

De modo que, el Tribunal Supremo ha expresado: "[l]a intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917-918 (2016). Por tanto, "[c]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier

hecho". *Rivera Menéndez v. Action Services*, 185 DPR 431, 444 (2012).

A la luz de lo anterior, el foro apelativo no deberá intervenir con las determinaciones de hechos, con la adjudicación de credibilidad realizada por los foros primarios, ni con el ejercicio de su discreción, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. *W.M.M., P.F.M., et al v. Colegio et al.*, 211 DPR 871, 903 (2023). Por lo que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, el foro apelativo estará imposibilitado de intervenir con la apreciación de la prueba y las determinaciones de los tribunales de instancia. En cuanto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013).

En cambio, el foro intermedio podrá intervenir con la apreciación de la prueba cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009). A tenor con lo anterior, si luego de que se realiza un análisis ponderado sobre la prueba desfilada, se sostiene que existe duda razonable y fundada sobre si se probó la culpabilidad del acusado más allá de duda razonable, este Tribunal deberá dejar sin efecto el fallo o veredicto condenatorio emitido por el foro de primera instancia. Es decir, en los casos de naturaleza criminal, no tendremos esa deferencia si: (1) hubo prejuicio, parcialidad o pasión, o (2) la prueba no concuerda con la realidad fáctica, es increíble o imposible. *Pueblo v. Resto Laureano*, 206 DPR 963, 968 (2021).

Conforme con estos principios, la determinación de culpabilidad que realiza el foro de primera instancia estará cobijada por una presunción de corrección y regularidad y, por ende, es merecedora de gran deferencia por parte de este Tribunal. *Pueblo v. Cabán Torr*es, 117 DPR 645, 653-654 (1986).

### C.

Es sabido que el foro primario es "el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de los daños". *Sucn. Mena Pamias et al. v. Meléndez et al., supra*, pág. 774; *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490-491 (2016); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889 (2012); *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774, 785 (2010).

Nuestro más alto foro ha expresado que el TPI está en mejor posición que los tribunales apelativos para evaluar la estimación y valorización de daños, pues son los que tienen contacto directo con la prueba. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 339 (1998). De igual modo, este ejercicio de valorización de daños tiene cierto grado de especulación y elementos subjetivos como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016). Por lo tanto, los tribunales apelativos no intervendrán con la decisión que emitan los foros primarios a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Santiago Montañez v. Fresenius Medical*, supra, pág. 490; *Blás v. Hosp. Guadalupe, supra*, pág. 339. Las indemnizaciones en casos anteriores se toman como punto de partida y deben adaptarse al valor actual. *Herrera, Rivera v. SLG Ramírez-Vicens*, 179 DPR 774, 785 (2010). En *Rosado v. Supermercado Mr. Special*, 139 DPR 946, 954-955 (1998), la valorización de los daños que sufrió una de las

partes fue estimada en la magnitud de los daños físicos que sufrió, molestias, dolores y condiciones que fueron desencadenadas a consecuencia de la caída. En el citado caso, el Tribunal Supremo no alteró la cuantía concedida por el TPI dado que fue el foro que evaluó el testimonio del perito y de las partes ante los daños sufridos por la parte que sufrió la caída. *Rosado v. Supermercado Mr. Special, supra*, pág. 955.

Cónsono con lo anterior, la valorización de los daños descansa en elementos subjetivos y especulativos que dependen del juzgador de los hechos, motivado por un sentido de justicia y conciencia humana. *Sucn. Mena Pamias et al. v. Meléndez et al., supra*, pág. 769; *Santiago Montañez v. Fresenius Medical, supra*, pág. 488; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns, supra*, pág. 785. En ese sentido, el tribunal debe considerar, en adición a la prueba desfilada, las indemnizaciones concedidas en casos anteriores, ajustarlas a su valor presente y las circunstancias particulares del caso ante sí, teniendo presente que no todos los casos son iguales y que la experiencia humana ante acontecimientos similares puede variar significativamente. *Sucn. Mena Pamias et al. v. Meléndez et al., supra*, pág. 769; *Santiago Montañez v. Fresenius Medical, supra*, págs. 491-497; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns, supra*, pág. 786.

### III.

En el caso de epígrafe, la AAA formuló nueve (9) señalamientos de errores. Con respecto a los primeros siete (7) señalamientos de error, el apelante argumentó que, el foro primario formuló unas determinaciones de hechos contrarias a la prueba desfilada ante sí. En adición, alegó que el foro primario erró en no aplicar la doctrina de negligencia comparada puesto que el apelado no fue cuidadoso cuando conducía la acera y, a su vez, no distribuyó la responsabilidad entre los otros cocausantes de los daños.

Por estar estrechamente relacionados el primer, segundo, tercero, cuarto, quinto, sexto y séptimo señalamiento de error procederemos a discutirlos en conjunto. Veamos.

Conforme las normas jurídicas pormenorizadas, para que prospere una causa de acción de responsabilidad civil extracontractual al palio del Artículo 1536 del Código Civil, *supra*, deben concurrir los siguientes requisitos: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*; *Pérez Hernández v. Lares Medical Center, Inc.*, *supra*, pág. 976; *López v. Porrata Doria, supra*, pág. 150. Con ello, el Estado debe responder en una acción de daños y perjuicios si la parte promovente prospera en demostrar que la acera tenía una condición de peligrosidad y no fue restaurada, entonces el Estado tiene la obligación de responder. En esa línea, en una acción de daños y perjuicios, la parte a la que se le reclama los daños ocasionados, puede interponer como defensa la negligencia comparada. Dicha defensa dispone que, se le debe reducir el porcentaje de responsabilidad al causante del daño ante el grado de negligencia en que haya incurrido el promovente. Es decir, es una defensa en la que se promueve no imponerle la culpa absoluta al demandado. Ante ello, se debe individualizar el porcentaje de los daños entre las partes.

Tras un examen de la totalidad del expediente y la prueba oral concurrimos con el dictamen del foro primario tras imputarle responsabilidad a la AAA.

Se desprende de la prueba oral que, el 8 de junio de 2023, el señor Marín Borrero, utilizó un *scooter* para llegar a su trabajo, en el Hotel Marriott.[24] Cuando tomó el *scooter* se dirigió hacia la Ponce

---

[24] Transcripción de la prueba oral (TPO), pág. 23; líneas 6-8; TPO, pág. 24; líneas 18-19.

De León, en dirección a su trabajo, el scooter "cayó en un boquete, en un hoyo que había, y me lanzó y me caí al piso, y tuve un... me dieron primeros auxilios. Llamaron a la ambulancia, todo eso".[25] El apelado testificó que, había un "hoyo" en el pavimento que pilló la rueda del *scooter*.[26] Ante ello, el apelado tuvo que ser sometido a un proceso quirúrgico en el que se le operó el brazo y le colocaron una pieza en el húmero.[27] Igualmente, sufrió daños en la rodilla[28] y se le tuvo que hacer un reemplazo de rodilla.[29] Asimismo, de la TPO se desprende que, dicha válvula carecía de una tapa que cubriera su abertura.[30] El apelado indicó que, estuvo dos (2) meses inválido. Coincidimos con el foro de instancia en que la ausencia de una tapa protectora en una válvula ubicada al nivel de la superficie constituía una condición peligrosa cuya capacidad de ocasionar un accidente era razonablemente previsible. Más aún, en un área de alto tránsito de vehículos y peatones. Asimismo, según surge de los autos los peritos presentados por ambas partes coincidieron, en sus respectivos informes, en cuanto a la naturaleza de las lesiones físicas sufridas por el señor Marín Borrero, así como la incapacidad de sus funciones generales.[31]

Por otra parte, un empleado de la AAA, el señor Alberto Torres Rivera (el señor Torres Rivera) declaró en una vista que, el 2 de septiembre de 2025, lo enviaron a observar el caso.[32] Una vez llegó al lugar de los hechos que dieron génesis al recurso, en la calle había una válvula con una ondulación.[33] Encima, el señor Torres Rivera sostuvo que, observó una botella telescópica llena de tierra.[34] El

---

[25] *Íd.*, pág. 27; líneas 4-7.
[26] *Íd*; pág. 27, líneas 17-19.
[27] *Íd*; pág. 39, líneas 12-14.
[28] *Íd*; pág. 39, líneas 16-18.
[29] *Íd*; pág. 49, líneas 3-5.
[30] *Íd*; pág. 94, líneas 1-11.
[31] Entrada núm. 54, Anejo 4; Entrada Núm. 56, Anejo 6 del caso núm. SJ2023CV09101 en el SUMAC.
[32] TPO, pág. 83, líneas 11-13.
[33] *Íd.*, pág. 83; líneas 16-18.
[34] *Íd.*, pág. 84; líneas 5-9.

señor Torres Rivera aclaró que, la función de la botella telescópica se le instala a las válvulas para protegerlas.[35] Declaró que, la botella se encontraba más abajo del nivel del asfalto.[36] A esos fines, mencionó que, la botella telescópica no tenía una tapa puesta y esta debe llevar una tapa.[37] Añadió que, no existe un reglamento sobre inspección de válvulas que son propiedad de la AAA.[38] Admitió que, el contenido dentro de la válvula o de la botella es propiedad de la AAA.

Como corolario de lo anterior, concurrimos con el dictamen apelado toda vez que, se configuraron los requisitos jurisprudenciales para que prospere una acción sobre daños y perjuicios en contra de la AAA. En primer lugar, surge de la prueba oral que, cuando el apelado transitaba la acera en un *scooter* la goma quedó pillada dentro de un hueco en el que una válvula de la AAA estaba al descubierto y con una ondulación. Es decir, la referida válvula estaba desprotegida y sobresalía del asfalto de la acera en controversia. En segundo lugar, el propio empleado de la AAA admitió que dicho ente es quien ostenta dominio y control sobre el manejo de las válvulas. Cónsono con ello, no le correspondía al Municipio de San Juan ni al Estado asumir dicha responsabilidad debido a que el dominio del manejo y mantenimiento de las válvulas le fue delegado a la AAA. Empero, resaltamos que, el Municipio de San Juan y el apelado lograron un acuerdo en el que este iba a reclamarle a la aseguradora del Municipio de San Juan los daños sufridos. Por tanto, el TPI tomó conocimiento acerca de la responsabilidad asumida por el Municipio de San Juan. Nótese que, si la AAA hubiese atendido la válvula en cuestión, hubiese previsto que ocurriese una caída y, consecuentemente, responder en

---

[35] *Íd.*, pág. 84; líneas 23-25; *Íd.*, pág. 85; líneas 1-2.
[36] *Íd.*, pág. 88; líneas 1-3.
[37] *Íd.*, pág. 94; líneas 7-10.
[38] *Íd.*, pág. 95; líneas 17-21.

concepto de daños y perjuicios la falta de cuidado sobre ello. En vista de lo anterior, el accidente sufrido por el apelado pudo haberse prevenido si la AAA proveía mantenimiento a la válvula en aras de evitar un accidente. A esos efectos, no se le debe eximir de responder por los daños perpetuados al señor Marín Borrero. Destacamos que, no se le debe imponer responsabilidad al apelado puesto que, no había un aviso sobre una ondulación en la acera y no era previsible anticipar el "hoyo" en la acera. Así pues, no debemos imponerle responsabilidad al señor Marín Borrero dado que sería oneroso, toda vez que, no era previsible anticipar que había un percance en la acera. También, el porcentaje de responsabilidad imputado a la AAA fue tomando en consideración el porcentaje adjudicado a los otros cocausantes del daño como lo fue el Municipio de San Juan y su aseguradora. Es meritorio resaltar que, esta Curia examinó las determinaciones de hechos colegidas por el TPI y resolvemos que la actuación del juzgador en el foro primario no medió pasión, prejuicio, parcialidad o error manifiesto, por lo que, determinamos que las determinaciones de hechos fueron fundamentadas en la prueba desfilada ante su consideración. Consecuentemente, el foro primario concluyó correctamente en imputarle responsabilidad a la AAA por los daños sufridos por el apelado. A su vez, las determinaciones de hechos y conclusiones de derecho fueron cónsonas con la prueba desfilada ante el *foro a quo.*

Por otro lado, con relación al octavo señalamiento de error, la parte apelante arguyó que, el TPI incidió en estimar el valor de los daños sufridos por el apelado tras concederle a dicha parte una compensación improcedente en derecho y exageradamente alta. Nuestro Tribunal Supremo ha reiterado que, es el foro primario "el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de los daños". *Sucn. Mena Pamias et al. v. Meléndez et*

*al., supra,* pág. 774; *Santiago Montañez v. Fresenius Medical, supra,* pág. 490-491; *Rodríguez et al. v. Hospital et al., supra*; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns, supra,* pág. 785. Asimismo, el más Alto Foro ha establecido que "la parte que solicita la modificación de los daños [tiene] la obligación de demostrar la existencia de las circunstancias que hacen meritorio que se modifiquen." *Meléndez Vega v. El Vocero de PR, supra,* pág. 203.

Tomando en consideración la normativa aplicable, el foro primario tomó conocimiento sobre los criterios delineados por el Tribunal Supremo y esbozó las razones para sustentar las cuantías adjudicadas. En adición, fundamentó el porcentaje y la cuantía ordenada a la luz de casos similares al de autos. Aclaramos que, la cuantía no fue una exageradamente alta toda vez que, el apelado fue sometido a varias operaciones, quedó sin empleo, estuvo encamado y en rehabilitación para recuperarse. Tal como expusimos previamente, en ausencia de algún error manifiesto, parcialidad o prejuicio en la estimación de los daños que realice el tribunal de instancia, no corresponde nuestra intervención, tal como lo es en el presente recurso. En vista de lo anterior, esta Curia no intervendrá con la cuantía concedida por el foro primario dado que le concederemos la deferencia que amerita y estimamos que la suma es proporcional a los daños sufridos por el señor Marín Borrero.

Por último, la parte apelante alegó que erró el TPI al imponerle el pago del interés legal al 8.0% anual sobre la *Sentencia* emitida el 17 de marzo de 2026, notificada el 18 de marzo de 2026. Sobre este particular, la Regla 44.3 de las de Procedimiento Civil, 32 LPRA Ap. V., R. 44.3, establece que la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras (Junta Financiera), a través de su reglamento, es el ente encargado de fijar y revisar periódicamente la tasa de interés por sentencia. En cumplimiento con la obligación derivada de la precitada regla, la Oficina del

Comisionado de Instituciones Financieras aprobó el Reglamento 78-1.[39] Dicho reglamento establece dos tasas de interés distintas, distinguiendo entre: (i) "[s]entencias impuestas al [ELA], sus municipios, agencias, instrumentalidades, corporaciones públicas o funcionarios en su carácter oficial"; y (ii) "[s]entencias impuestas a entidades no contempladas en el anterior apartado".[40]

En consecuencia, toda vez que la AAA es una corporación pública, procede aplicar el 4.00% de interés legal, que es el porciento dispuesto para los dictámenes contra el Estado, de conformidad con el precitado reglamento y la tabla de intereses aplicables a sentencias judiciales.[41] A la luz de lo anterior, resolvemos que incidió el foro primario al aplicar el porciento de interés legal de 8.00% establecido para sentencias de entidades no contempladas. Por tanto, modificamos la *Sentencia* apelada a los fines de modificar el porciento de interés legal aplicado.

Conforme a lo aquí resuelto, resolvemos que, el foro primario actuó correctamente en imponerle responsabilidad a la AAA tras el señor Marín Borrero sufrir varios daños a consecuencia de la negligencia de la parte apelante en atender la válvula. Igualmente, el porcentaje de responsabilidad impuesto a la AAA fue cónsono con los daños ocasionados y deduciendo el porcentaje adjudicado al resto de los cocausantes del daño.

**IV.**

Por los fundamentos que anteceden, modificamos la *Sentencia* apelada a los fines de modificar el porciento del interés legal aplicado y, así modificada, se confirma el dictamen revisado.

Notifíquese.

---

[39] Reglamento 78-1 del 25 de octubre de 1988 de la Oficina del Comisionado de Instituciones Financieras.
[40] Reglamento 78-1, Sección 3 (a) y (b), *supra.*
[41] Intereses Aplicables a Sentencias Judiciales, Oficina del Comisionado de Instituciones Financieras, pág. 2.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones